■ Barbara J. Ford, Respondent, v Rector, Church-Wardens, Vestrymen of Trinity Church in the City of New York et al., Appellants. [975 NYS2d 408]—

Order, Supreme Court, Bronx County (Laura G. Douglas, J.), entered July 6, 2012, which granted plaintiff's motion to compel production of an investigatory file, and order, same court and Justice, entered February 19, 2013, which, upon renewal and reargument, adhered to the determination on the original motion, unanimously affirmed, without costs.

Plaintiff, who worked for the institutional defendants (Trinity) for nearly 20 years, alleges that starting in the summer of 2006 she was subjected to race and age discrimination by defendant Jennifer Campbell, Trinity's controller, and that Trinity did nothing to stop it, which caused her to file an internal complaint with the human resources department in May 2008. In July 2008, plaintiff filed a complaint with the New York State Division on Human Rights (SDHR), but withdrew it on January 30, 2009, for administrative convenience, so as to commence the instant action, on March 4, 2009. Plaintiff also alleges that Trinity, through Campbell's actions, retaliated against her for filing the internal and SDHR complaints by diminishing her workload and responsibilities.

In early January 2009, Trinity received anonymous faxes alleging scurrilous conduct on Campbell's part and alleging that Campbell was mistreating black and Hispanic employees. Trinity engaged a third-party investigation firm to uncover the source of the anonymous faxes, and over the course of several months, the investigation narrowed its focus to plaintiff, who was later accused of sending the faxes and was terminated on June 17, 2009, after defendants concluded that she was the culprit. Plaintiff amended her complaint to include the accusations and eventual termination as part of defendants' allegedly retaliatory conduct.

Because defendants cited plaintiff's purported act of sending or causing to be sent the anonymous faxes as the sole reason for the termination, plaintiff sought to compel discovery of the documents constituting the investigator's file, including communications between defendant's counsel and the investigators. Defendants opposed on the grounds of the attorney-client relationship, attorney work product, and materials prepared in anticipation of litigation. After a two-year in camera inspection of the file, which exceeded 2,700 pages of documents, Supreme Court found that none of the privileges were applicable.

We perceive no basis for disturbing the court's findings (see *Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000]).

The court first noted that the documents revealed that Trinity's attorneys were assisting Trinity with its internal business operations by retaining the third-party investigation firm to uncover the source of the faxes, but also included summaries of the facts gathered by the investigator. Moreover, while certain status updates were relayed by the attorneys, there was no indication that they dispensed any legal advice to their clients based upon the investigation's findings. Hence, the court concluded that the attorney-client relationship was not impli-

cated because, when viewed in their "full content and context," the documents did not contain any legal analysis or legal opinions or communications between Trinity and its counsel that were "primarily or predominantly of a legal character" (*see Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 377-379 [1991]).

The court found that the attorney work product privilege did not apply because the documents did not indicate that an attorney had conducted any legal research or analysis or rendered any legal opinion about the client's legal position (*see Matter of New York City Asbestos Litig.*, 109 AD3d 7, 12 [1st Dept 2013]).

As to the privilege for materials prepared in anticipation of litigation (*see* CPLR 3101 [d] [2]), although defendants assert that they suspected plaintiff initially, the evidence in the record is equivocal on that point, and Trinity's director of human resources testified that the sole reason for launching the investigation was to uncover the source of the fax. Moreover, although defendants claim that they were already in "litigation mode" because plaintiff's SDHR complaint was still pending when the faxes were first received, they do not explain how uncovering the source of the January 2009 faxes would aid in defending against the race and age discrimination claims asserted in the SDHR complaint, which was filed in July 2008, based on conduct that occurred during the preceding two years. In addition, in letters to the court in connection with the submission of the documents for the in camera inspection, defendants' counsel indicated that Trinity retained the investigation firm only to identify the faxes' origin, and not to investigate plaintiff, and that the documents were not generated to provide a defense to plaintiff's retaliation claim. Thus, the court properly concluded that the primary purpose of investigating the source of the faxes was employee discipline, and that this task was related to business judgment, rather than any legal strategy related to the then pending SDHR complaint.

We have considered defendants' remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Acosta, Moskowitz, Manzanet-Daniels and Gische, JJ.